# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

SCOTT MYERS,

                                        Plaintiff,

                                                            6:15-CV-553
        v.                                                  (DNH/ATB)

CHARLES BUCCA, et al.,

                                        Defendants.

SCOTT MYERS, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Scott Myers. (Dkt. No. 1)  Plaintiff Myers has also filed an application to proceed in forma pauperis ("IFP")[1] and a motion for appointment of counsel in the complaint. (Dkt. Nos. 2, 3).  For the following reasons, this court will conditionally grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii) as to all but one claim as against only one defendant.

## I.    IFP Application

A review of plaintiff Myers's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2).  A civil action is commenced in federal district court

---

[1] As discussed below, plaintiff's IFP application is incomplete.

by "filing a complaint." Fed. R. Civ. P. 3. The statutory filing fee[2] must also be paid at the time an action is commenced, unless a completed IFP Application is submitted to the court. *See* 28 U.S.C. §§ 1914(a); 1915(a). The Prison Litigation Reform Act, ("PLRA"), 28 U.S.C. § 1915, provides in pertinent part, that an IFP Application must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).

In accordance with Local Rule 5.4 of the Local Rules of Practice in the Northern District of New York, a prisoner seeking IFP status in a civil action, subject to the PLRA, may satisfy this requirement by submitting a completed, signed, and certified IFP application. N.D.N.Y.L.R. 5.4(b)(1)(A). Local Rule 5.4 further provides, in pertinent part, that, if the prisoner fails to fully comply with the above-described requirements after being informed by court order of what is required, "the Court shall dismiss the action." N.D.N.Y.L.R. 5.4(b)(2)(A).[3]

---

[2] The total cost for filing a civil action in this court is $400.00 (consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00). A party granted IFP status is not required to pay the $50.00 administrative fee, but a prisoner granted IFP is required to pay, over time, the full amount of the $350.00 filing fee, regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

[3] Rule 41(b) of the Federal Rules of Civil Procedure permits a court, in its discretion, to dismiss an action based upon the failure of a plaintiff "to comply with these rules or a court order, . . . ." Fed. R. Civ. P. 41(b). It is well-settled that the term "these rules" in Fed. R. Civ. P. 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for a district court. *See*

Plaintiff is well-aware of this requirement because he has filed the appropriate form in another civil action that he has recently brought in the Northern District of New York after being ordered to do so by the court. *See Myers v. Annucci*, 9:15-CV-46 (GLS/DEP - Dkt. Nos. 2, 4). In *Myers*, the court ordered Administrative Closure of the action, pending plaintiff's submission of the appropriate documents. (Dkt. No. 2 in 15-CV-46). Rather than order closure at this point, the court will analyze the plaintiff's complaint, but order that he submit the appropriate form before the case may proceed any further.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has

---

*Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006).

3

a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

Plaintiff begins his recitation of facts by stating that he and his wife rented a loft penthouse in 1981, one block away from the World Trade Center in New York City. (Complaint "Compl." ¶ 2). Plaintiff alleges that he and his then-pregnant wife were still living in that apartment when the terrorist attacks on September 11, 2001 ("9/11") occurred. (*Id.*) Plaintiff states that because his apartment could not be cleaned of

contaminants due to the 9/11 tragedy, he and his wife moved to Tannersville,[4] New York. (*Id.* ¶ 3). Plaintiff claims that on September 3, 2004, after their move to Tannersville, plaintiff was arrested after a trip to Williams Lumber. (*Id.* ¶ 4). Plaintiff states that his young daughter was with him at the time of the arrest. Although it is completely unclear, plaintiff appears to allege that he was prosecuted for something as a result of this arrest, and that the "damage" over this prosecution exacerbated his wife's post-traumatic stress syndrome ("PTSD"), which led to her filing for divorce. (*Id.*)

Plaintiff claims that defendant Charles Bucca, the Assistant District Attorney ("ADA") who prosecuted him, had an "obvious conflict of interest" which was "raised and ignored." Plaintiff states that the conflict involved ADA Bucca and his father "represent[ing] the matrimonial property" in which plaintiff and his wife lived. Plaintiff concedes that the conduct involved in his background facts is "outside the 3 year reach of a 1983/85 [action], the pattern begins here and therefore matters." (*Id.* ¶¶ 5, 7).

Plaintiff spends the next few paragraphs of his complaint discussing the resulting action for divorce brought by his wife. (*Id.* ¶¶ 9-11). Plaintiff blames terrorism, his wife's PTSD, miscarriages, displacement, and asbestos for the divorce proceedings and

---

[4] Tannersville is in Greene County which is located in the Northern District of New York.

5

criticizes Justice Prus[5] for issuing an order of protection against plaintiff in 2004, and then having plaintiff jailed for contempt.[6] (Compl. ¶ 9). Plaintiff also criticizes Justice Prus for his rulings regarding the assets of the marriage and custody of the children. (*Id.*)

Plaintiff alleges that the errors committed by Judge Prus were "systemic," and plaintiff cites to a report on "Attorney Behavior in Criminal Matters," authored by Hon. Sondra Miller. (Compl. ¶ 10). Plaintiff claims that the failures of the matrimonial system were so great that Judge Jacqueline Silberman, the Chief Matrimonial Judge in New York State was "fired" over these issues. (*Id.*) Plaintiff states that he sued Judge Silbermann in the Southern District of New York.[7] Plaintiff claims that the case against Judge Silbermann was "prematurely suppressed" by "then Chief Judge . . . Kimba Wood." (Compl. ¶¶ 11). Plaintiff claims that Chief Judge Wood was "advantaged" in her second divorce by Judge Silbermann, implying that somehow Silbermann was Wood's "close colleague," and this relationship created a "conflict of interest." (*Id.*) Plaintiff claims that the Second Circuit agreed, "demoted" Judge Wood, and "brought in" Judge Loretta Preska. (*Id.*)

---

[5] Hon. Eric I. Prus is a Justice of the Matrimonial Term of the Supreme Court in Brooklyn, New York. https://nycourts.gov/courts/2jd/kings/civil/matrimonialjudgesrules.shtiml. Justice Prus apparently presided over plaintiff's divorce proceedings.

[6] Plaintiff states that he was jailed for six months "for complaining that [the judge] facilitated terrorism. (Compl. ¶ 9).

[7] *Myers v. Silbermann*, No. 08 Civ. 4592.

Plaintiff states that he remained in Tannersville, having established a business there. (Compl. ¶ 14). However, plaintiff was arrested on February 14, 2010, for charges "which included" Driving While Intoxicated ("DWI").[8] Plaintiff alleges that the arresting officer, defendant Officer Rowell, was not "licensed to operate the chemical test equipment" and "made up the probable cause of not using a turn signal." (Compl. ¶ 15). Plaintiff states that defendant Rowell did not do a field sobriety test, did not provide *Miranda* rights, "read the refusal warning," or "allow representation." (*Id.*) Plaintiff states that defendant Rowell "made up" the results at the police station. (*Id.*)

Plaintiff claims that defendant ADA Bucca "prosecuted inappropriately, manipulating the non-attorney Town of Athens Judge Constance Pazen." (*Id.*) Plaintiff states that defendant Bucca delayed the trial for 732 days, and that Judge Pazen took defendant Bucca's "legal advice" and "facilitated the malicious prosecution" by denying all of plaintiff's motions. (*Id.*) During the bench trial, plaintiff was charged with contempt of court for some comments that he made while representing himself, and plaintiff alleges that the court found plaintiff guilty without reviewing the testimony. (*Id.*)

Plaintiff claims that the decision was reversed on speedy trial grounds by Acting County Court Judge Richard M. Koweek, after County Court Judge George Pulver

---

[8] Plaintiff states that the charges "included" DWI, which implies that there were other charges, but plaintiff has failed to indicate what those charges may have been.

"recused himself"[9] after sentencing on the first of two "secret" grand jury indictments "11-100" and "13-163" at a September 20, 2011 court appearance. (Compl. ¶ 16). Plaintiff claims that the "transcript" of "that hearing" advises defendant Bucca to "recuse," but that defendant Bucca refused. (*Id.* ¶ 17).

Plaintiff claims that the arrest for contempt during the "Athens" trial was "misused as two counts of probation violation in revenge for my successful defense." (*Id.* ¶ 18). Plaintiff claims that "this" constitutes malicious prosecution and "ties Bucca, Wilhelm, Frisbee, Rowell, and later Baeckmann as defendants."[10] Plaintiff claims that the "sociopathic intent" of defendants may be seen in plaintiff's April 9, 2014 Presentence Report ("PSR"), which "defames" plaintiff. (Compl. ¶ 19). In that report, defendant Bobby Haines, Sergeant in the Hunter Police Department, and Ms. Baeckmann both made derogatory statements about plaintiff, including noting his refusal to accept responsibility for his actions. (*Id.*) Plaintiff states that individuals who work in the probation department have no education or license in psychology or psychiatry. (Compl. ¶ 20). Plaintiff alleges that the "named defendants" show "a pattern and specific acts over time" which will become more specific "during motion practice." (Compl. ¶ 22). Plaintiff states that there is evil motive and intent; moral

---

[9] Plaintiff alleges that Judge Pulver recused himself "for cause," ineffectiveness, and "a too close relationship with the District Attorney Terry Wilhelm." (Compl. ¶ 16).

[10] Defendant Wilhelm was the District Attorney of Greene County at that time (Compl. ¶ 31). Defendant Frisbee was the Director of the Greene County Probation Office (Compl. ¶ 28), and defendant Baeckmann was a probation officer (Compl. ¶ 29).

depravity; deliberate indifference; recklessness; and callousness. (*Id.*)

The complaint contains a numbered paragraph for each defendant in which plaintiff attempts to explain his claims against him or her. Plaintiff alleges that defendant Bucca "participated substantively" in acts against plaintiff and his family in "the dual role as prosecutor and family lawyer in [a] small village." (Compl. ¶ 25). Plaintiff alleges that although defendant Bucca was told by the court to "recuse," he "did attack our family" and "manipulated investigations outside his role as ADA." (*Id.*)

Greg Seeley is the Sheriff of Greene County, and plaintiff alleges that he supervised defendants Michael Spitz and Patrolman Rowell. Seeley is "being held accountable for various conditions at the jail." (*Id.* ¶ 26). These conditions include thefts during booking; intentional obfuscation of access to courts (by Spitz and other jail officers); various breaches of attorney client privilege; various retaliatory acts; and a "pattern" of perjury, false arrests; false imprisonment; "and other constitutional failures." (*Id.*)

Plaintiff has sued defendant Rowell for "various" false arrests; false statements on official documents; and perjury during the Athens trial. (Compl. ¶ 27). Defendant Frisbee is named due to his alleged failure to properly train his subordinate officer, Glen Lubera.[11] Plaintiff claims that defendant Frisbee committed perjury "while under

---

[11] Mr. Lubera is not named as a defendant.

oath as a witness for this litigant . . . ."[12] (*Id.* ¶ 28).  Defendant Frisbee is also named because he did not use the content of a professional report and required "alcohol and drug restrictions which were not otherwise indicated."  Plaintiff also names defendant Frisbee for his role in investigating, preparing, and delivering a PSR for Greene County Indictment 13-163. (*Id.*)

Donna Baeckmann, one of defendant Frisbee's probation officers is named as a defendant because she prepared the PSR, and in so doing, exacerbated plaintiff's ex-wife's PTSD.  The PSR attacked plaintiff's public reputation with slander, perjury, and fraud, illustrating deliberate indifference by defendant. (Compl. ¶ 29).  Plaintiff alleges that he has sued Michael Spitz because he is the Superintendent of the Greene County Jail and has committed errors that are "not caused by architecture, but by "management harm," including impeding access to the courts, abusing visitors, destroying legal papers, and denying notary services. (Compl. ¶ 30).  Plaintiff claims that his conduct shows deliberate indifference. (*Id.*)

Terry Wilhelm, a former District Attorney of Greene County has been named because he supervised defendant ADA Bucca and non-defendant ADA Ann-Marie Rabin (who prosecuted Indictment 13-163). (Compl. ¶ 31).  Plaintiff alleges that the "inappropriate prosecutions" began with the 2004 Williams Lumber incident.  The

---

[12] Actually, it is unclear from the complaint whether Frisbee or to Lubera testified "for" plaintiff.  The court will discuss the issue below under both interpretations.

complaint contains a lengthy discussion of allegations of corruption involving defendant Wilhelm and other individuals, including a retired judge and an attorney on the Greene County Ethics Committee. (*Id.*)

Defendant Bobby Haines is the "Sergeant in Charge," and plaintiff states that defendant Haines is named because of his "consistent" civil rights violations against plaintiff. (Compl. ¶ 32). Earlier in the complaint, plaintiff alleges that Haines made derogatory remarks about plaintiff in his presentence report. (Compl. ¶ 19). Plaintiff states that defendant Haines creates a journal and seeks protection from "locals." He observed and recorded plaintiff's socializing, but only reported[13] on the items that he can "use against" plaintiff, instead of reporting about plaintiff's business or his role as "Frostie" the Snowman in the annual village parades. He had deputies drink out of plaintiff's cup to see if it contained alcohol. There is a reference to *Miranda*, and a statement that he "fails the requirement of counsel when invoked." (*Id.*)

Plaintiff claims that all "issues" brought against him by Greene County have been "litigated and defeated with the exception of the two secret grand juries invented by Bucca and Wilhelm and prosecuted . . . by ADA Ann-Marie Rabin." (Compl. Conclusion). Plaintiff claims that Indictments 11-100 and 13-163 are malicious and "aid the intent of terrorism to harm [his] family." (*Id.*) Plaintiff has attached a

---

[13] Because plaintiff uses the word "reported," the court assumes that plaintiff is referring to the statements in the presentence report. However, plaintiff certainly does not make this clear.

"Timeline" of many of the events in his life, beginning at birth and continuing through conviction on Indictment 13-163.[14] (Compl. CM/ECF p.15). He has also attached his Education and Work History. (*Id.* at 16). Finally, he includes a document, entitled "Authorities Rights Violations." (*Id*, at 17). Plaintiff states that his "issues" regarding the Greene County Jail were exhausted by grievance; and *Heck v. Humphrey*[15] does not apply because plaintiff is not attacking the "underlying matters," but rather the "abuse of power" by individuals acting under color of state law. (*Id.*)

## III.  Immunity

### A.  Legal Standards

#### 1.  Prosecutors

Prosecutors are afforded absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts

---

[14] Plaintiff is currently incarcerated pursuant to a conviction for Criminal Contempt, First Degree. www.http://nysdoccslookup.doccs.ny.gov/GCA00P00/WINQ000. He was sentenced to one year and four months to four years confinement.

[15] Civil lawsuits may not be used to collaterally attack criminal convictions or confinements. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Croft v. Greenhope Services for Women, Inc*., No. 13 Civ. 2996, 2013 WL 6642677, at *5 (S.D.N.Y. Dec. 17, 2013) (citing *Heck, supra*). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87.

associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

## 2. Probation Officers

The Second Circuit has held that probation officers who prepare and furnish PSRs to the court are entitled to absolute immunity from suits for damages. *Hall v. Marshall*, 479 F. Supp. 2d 304, 314-15 (E.D.N.Y. 2007) (citing *Hill v. Sciarrotta*, 140 F.3d 210, 213-14 (2d Cir. 1998) (extending absolute immunity to state probation officers in addition to federal probation officers). The rationale behind affording probation officers absolute immunity is the interest in having the PSR provide the court with all the information that is relevant to sentencing. *Id. See also Grant v. Ahern*, No.

03-CV-539, 2005 WL 1936175, at *3 (N.D.N.Y. Aug. 2, 2005) (citations omitted) (probation officer afforded absolute immunity in preparing PSR).

If either the prosecutor or the probation officer is acting in an investigative capacity, then they are no longer afforded absolute immunity, but are still protected by qualified immunity. The doctrine of qualified immunity protects government officials performing discretionary functions in the course of their employment. *Delisser v. Goord*, 9:02-CV-073, 2003 WL 133271 at *2, 2003 U.S. Dist. LEXIS 488 (N.D.N.Y. Jan. 15, 2003). It shields them from liability for money damages where "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"For a constitutional right to be clearly established, there must be binding precedent recognizing it: 'Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established.'" *Hall*, 479 F. Supp. 2d at 315 (citing *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir.2004)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

## B. Application

Plaintiff has named two prosecutors, ADA Charles Bucca and DA Terry

Wilhelm. Plaintiff claims that defendant Bucca prosecuted plaintiff even though he had

an alleged conflict of interest. Without even discussing the issue of the statute of

limitations,[16] any claim for damages by plaintiff for improper, inappropriate, malicious,

or even "evil" prosecution would be barred by absolute immunity. However, in one

paragraph of his complaint, plaintiff states that "Mr. Bucca, although warned by the

court to recuse, did attack our family and did use the color of law, and did *manipulate*

*investigations outside his role as ADA*, and other acts, and as such is claimed as a

primary agent from whom damages are sought." (Compl. ¶ 25) (emphasis added).

Although plaintiff states that defendant Bucca manipulated investigations outside

his role as ADA, there are absolutely no facts that relate or refer to investigatory duties

performed by this defendant. The only thing that plaintiff alleges is that defendant

Bucca had a conflict of interest and should not have been assigned to prosecute any of

plaintiff's criminal cases. However, plaintiff's allegations against defendants Bucca

---

[16] The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Plaintiff in this case is aware of the statute of limitations because he indicates in the beginning of his complaint that he is aware that some of his allegations are "outside the reach of a 1983/85 [case]." (Compl. ¶ 7). Plaintiff signed his complaint on April 22, 2015, and the complaint was filed on May 4, 2015. (Compl. at p.1). Even giving plaintiff the benefit of the prison "mailbox" rule, any conduct occurring prior to April 22, 2012 would be barred by the statute of limitations, absent equitable tolling. Because this court has based its recommendation on absolute immunity with respect to the prosecutors and the probation officers, there is no need to discuss the applicability of the statute of limitations.

and Wilhelm are not investigatory duties.  The only time that plaintiff mentions "manipulation" is when he states that defendant Bucca manipulated a town justice, who was not an attorney, and this allegedly resulted in the denial of plaintiff's motions. (Compl. ¶ 15).  Plaintiff claims that the judge "took the legal advice from defendant Bucca . . . ."  Defendant Bucca's actions in front of the court, in furtherance of plaintiff's prosecution, are protected by absolute immunity.

Plaintiff claims that he was arrested for contempt of court in the first hour of the bench trial, and that even though this charge was dismissed, the arrest was later "used" a basis for a charge of probation violation "in revenge" for plaintiff's successful defense. (Compl. ¶ 18).  Plaintiff claims that this constitutes "malicious prosecution" and "ties Bucca, Wilhelm, Frisbee, Rowell, and later, Baeckmann as defendants."[17] (*Id.*) Even if plaintiff's statements are true, the district attorneys would be entitled to absolute immunity for the conduct with which the plaintiff accuses them because as stated above, the prosecutor is entitled to absolute immunity for his or her decision to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d at 292.  Thus, this complaint should be dismissed as against defendants Bucca and Wilhelm based upon absolute immunity.

The same is true for probation officers Frisbee and Baeckmann.  Plaintiff seeks to hold defendant Baeckmann liable for preparing a PSR that was inaccurate and not

---

[17] Plaintiff may be attempting to support his claims of "conspiracy" with this statement.

complimentary. (Compl. ¶ 29). Plaintiff claims that the information in the PSR

exacerbated his ex-wife's PTSD, attacked plaintiff's "public" reputation, and illustrated

"deliberate indifference." (*Id.*) Plaintiff alleges that defendant Baeckmann criticized

plaintiff's behavior in the PSR, stating that plaintiff engaged in "ongoing defiant

behavior" and "refuse[ed] to take responsibility for his actions to date.'" (Compl. ¶ 19).

Essentially, plaintiff alleges that defendant Baeckmann defamed plaintiff in preparing

the PSR. Even if plaintiff's allegations are true, defendant Baeckmann's conduct is

protected by absolute immunity.[18]

Plaintiff alleges that defendant Frisbee is liable for his failure to train the

---

[18] In *Hall v. Marshall*, the plaintiff was suing the probation officer over the contents of his PSR. 479 F. Supp. 2d at 313. Plaintiff claimed that the information in the PSR was false and was used to deny him parole. *Id.* The court found that the probation officer would be entitled to absolute immunity, but also considered qualified immunity in the alternative. 479 F. Supp. 2d at 315. The court first noted that even "palpably false statements by a government actor will not support a section 1983 claim if the only damage is to plaintiff's reputation. *Id.* at 313 (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (defamation is a matter of state law)). Governmental defamation is only actionable if it falls within the "stigma plus" doctrine, requiring that the utterance was sufficiently derogatory and false, but that plaintiff suffered a material state-imposed burden or alteration of plaintiff's status or rights. *Id.* However, outside the loss of government employment, what constitutes "plus" is unclear. *Id.* (citing *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)). The court in *Hall* assumed that the plaintiff had adequately alleged a stigma, and that despite the uncertainty over the definition of "plus," the fact that plaintiff was denied parole over an inaccurate PSR qualified as a "plus." *Id.* at 314. However, even assuming that plaintiff stated a constitutional claim, the court found that neither the Second Circuit nor the Supreme Court has ever held that the refusal to correct criminal history records rose to the level of a constitutional violation, and thus, the defendant would not reasonably know that opposing the correction of those records would violate a constitutional right. *Id.* at 315. In this case the probation officer defendant was expressing her assessment of plaintiff's acceptance of responsibility and was reporting statements made by one of the other defendants regarding plaintiff. The officer could not have reasonably known that such conduct would violate an individual's constitutional rights. Thus, even if absolute immunity did not apply, it is likely that defendant Baeckmann would be entitled to at least qualified immunity. This court does not specifically make this finding, having relied upon absolute immunity for this recommendation.

probation officers who work for him. (Compl. ¶ 28). Plaintiff wishes to impose liability

on defendant Frisbee for "his role in the supervision and preparation and investigation

and delivery of a presentencing investigation report." (*Id.*) Plaintiff seeks to hold

defendant Frisbee liable for defendant Baeckmann's allegedly false and defamatory

PSR. Defendant Frisbee is also entitled to absolute immunity to the extent that he was

even involved in the matter.

Plaintiff may be also claiming that defendant Frisbee is responsible for failing to

train another probation officer, Glen Lubera, who is not named as a defendant in this

action. Plaintiff starts the paragraph discussing Frisbee, and states that he is liable for:

> specific acts during the investigation and implementation of
> various probation periods such as failure to properly train or
> supervise his subordinate Probation Officer Glen Lubera,
> perjury while under oath as a witness for this litigant during
> his defense of Greene County Indictment 11-100, probation
> claim C#080-11, for instance denying receipt of a
> psychological report from Greene County Clinical Director
> Dr. David Fredenburg, not using the content of the
> professional report and requiring alcohol and drug restrictions
> which were not otherwise indicated, and for his role in the
> supervision and preparation and investigation and delivery of
> a presentencing investigation report . . . .

(Compl. ¶ 28). It is unclear from the above paragraph whether Lubera or defendant

Frisbee testified for plaintiff during the trial of Greene County Indictment 11-100 or

who actually prepared the PSR. Glenn Lubera is not named as a defendant. In any

event, to the extent that the claims involve defendant Frisbee, he is entitled to absolute

immunity.

Additionally, if plaintiff is alleging Frisbee himself testified "for" plaintiff, his conduct[19] on the witness stand is protected by absolute immunity. Witnesses in both the Grand Jury and at trial are entitled to absolute immunity. *Rehberg v. Paulk*, __ U.S. __, 132 S. Ct. 1497, 1505-07 (2012) (extending the absolute immunity granted to trial witnesses for statements made in the course of a judicial proceeding in *Briscoe v. LaHue*, 460 U.S. 325, 336-46 (1983) to grand jury witnesses, even if the witness is a law enforcement officer).

If the court assumes that defendant Frisbee did not testify, but plaintiff has sued him for supervising Lubera, the complaint would have to be dismissed against Frisbee for lack of personal involvement. Personal involvement is required for the assessment of damages in a section 1983 action, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). If defendant Frisbee did not testify, there is no other allegation of personal involvement, and it is unclear how he would have involved in plaintiff's case. Conclusory allegations that the defendant failed to train his subordinates are insufficient to allege that he was personally involved in any constitutional violations. *Murray v. Arquitt*, No. 2014 WL 4676569, at *12

---

[19] For purposes of this recommendation, the court will assume both that plaintiff is complaining about defendant Frisbee's own conduct and about his supervision of another officer.

(N.D.N.Y. Sept. 18, 2014).  Thus, the complaint may be dismissed as against

defendants Frisbee and Baeckmann.

## IV.    Defendants Greg Seeley and Michael Spitz

As stated above, personal involvement is required in order to sue for damages

under section 1983.  *Wright v. Smith,* 21 F.3d at 501.  Plaintiff names Gregg Seeley as a

defendant.  Defendant Seeley is the Sheriff of Greene County.  Plaintiff states that

Sheriff Seeley is responsible for the acts of Michael Spitz, who is the Supervisor of the

Greene County Jail, and Seeley is also responsible for the acts of defendant Patrolman

Rowell, an officer in the "county police force under Seeley." (Compl. ¶ 26).  Plaintiff

states that defendant Seeley is being held "accountable" for "various conditions" at the

jail and by field officers.  Plaintiff then includes a list of vague general allegations of

alleged deficiencies at the County Jail, including "thefts during booking," "various

retaliatory acts" while plaintiff was held at the jail; and for "a pattern of perjury," fraud,

false arrests, and false imprisonment, "and other constitutional failures." (*Id.*)

First, there is no indication that defendant Seeley was personally involved in any

of the alleged violations that plaintiff lists.  In addition, plaintiff's list consists of

conclusory allegations of everything that he apparently believes was wrong with the

County Jail.  Plaintiff never details any "thefts" at booking.  He never mentions to what

"retaliatory acts" he is referring, or what kind of fraud, false arrests, or imprisonments.

A complaint that merely repeats the personal involvement standard without offering any

facts indicating how an individual supervisory defendant was personally involved cannot withstand dismissal. *El Hanafi v. United States*, No. 1:13-CV-2072, 2015 WL 72804, at *15 (S.D.N.Y. Jan. 6, 2015). *See Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011); *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009); *JCG v. Ercole*, No. 11 Civ. 6844, 2014 WL 1630815, at *27-28 (S.D.N.Y. Apr. 24, 2014) (citations omitted), *Report Rec. adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014).

The same is true for defendant Spitz. He is defendant Seeley's subordinate, but he is the Supervisor or Warden of the Greene County Jail. Plaintiff claims that defendant Spitz engaged in "extensive errors" that were "not caused by architecture but by management harm." (Compl. ¶ 30). Plaintiff claims that he was "deliberately indifferent, morally depraved, and reckless, and that his actions resulted in denial of access to courts; abused visitors; denial of timely notary services; and destruction of legal papers, resulting in damage to plaintiff, his family, his reputation, and his business. (*Id.*) The complaint contains only sweeping generalities with no specific dates or instances of any unconstitutional conduct.

Complaints that rely on civil rights statutes "are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Johnson v. Gagnon*, No. 9:14-CV-916, 2015 WL 1268199, at *12 (N.D.N.Y. Mar. 19, 2015) (citing *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d

358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J .)

Plaintiff's complaint is filled with conclusory allegations that "shock but have no meaning." With respect to defendant Spitz, there is no indication of how defendant Spitz may have been involved in any of the claims, when any of these alleged violations may have occurred, how visitors were "abused," when legal papers were "destroyed" or how that impeded plaintiff's access to courts. Thus, the complaint may be dismissed as against defendant Spitz.

## V.    **Defendant Haines**

Plaintiff names "Sergeant in Charge Bobby Haines" as a defendant. Although the plaintiff writes more than one page outlining all the things that were allegedly done by this defendant, none of them even remotely state a constitutional violation. Plaintiff does allege in a conclusory manner that defendant Haines is being sued for "consistent failures of civil rights against myself and family." (Compl. ¶ 32). He states that defendant Haines "pushed out" another officer, who apparently was doing a good job working "to cause peace" in the "small mountain-top." (*Id.*)

As stated above, earlier in the complaint, plaintiff states that defendant Haines made derogatory remarks to the probation officer for inclusion in his presentence report. (Compl. ¶ 19). It is possible that part of the discussion in paragraph 32 relates to how defendant Haines obtained his opinion or evidence. Plaintiff claims that defendant

Haines "investigates" and "creates a journal, is highly opinionated . . . and seeks political protections from 'locals' in favor of 'non-locals.'" Haines "records" plaintiff's socializing, but only "reports" on items that he can use against plaintiff, and he does not describe plaintiff's business or his good deeds. Instead, he attacks, points his gun, demeans plaintiff's engineering business, and enters his apartment to aid a mayoral candidate. (*Id.*) In addition, defendant Haines apparently "fails timely Miranda," "fails the requirement of counsel when invoked," and "causes rather than ameliorates conflict." "Haines will misuse his gun, badge, car, and prominence to undermine justice and peace." (*Id.*) Plaintiff provides no specifics or dates for any of these alleged actions.

To the extent that plaintiff may be attempting to claim that defendant Haines said derogatory things in plaintiff's presentence report, he does not claim that Haines lied, merely that he only reported things that could be "used" against plaintiff. Plaintiff alleges that this is the result of law enforcement, "who . . . have no education or license in psychology or psychiatry." (Compl. ¶ 20). Complaining that someone is not qualified to render an opinion does not rise to the level of a constitutional violation. Thus, plaintiff's complaint against Sergeant Haines may be dismissed. It is unclear what else plaintiff might be attempting to allege against Sergeant Haines.

## VI. Defendant Rowell

Plaintiff claims that defendant Rowell is liable for "various false arrests, false

statements on official documents, and perjury during trial. (Compl. ¶ 27). However, the only arrest by defendant Rowell mentioned in the complaint is an arrest for Driving While Intoxicated ("DWI"), dated February 14, 2010. (Compl. ¶¶ 15, 27). As stated above, the statute of limitations for section 1983 actions is three years. *Owens v. Okure, supra*. A false arrest claim accrues, and the statute of limitations begins to run at the time of the arrest, while a malicious prosecution claim accrues when the conviction is invalidated. *Othman v. City of New York*, No. 2015 WL 1915754, at *5 (E.D.N.Y. Apr. 27, 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 392-94 (2007)). *See also Heck v. Humphrey*, 512 U.S. 477 (1994).

Plaintiff allege that the conviction for DWI was reversed by County Court Judge Richard M. Koweek, based upon speedy trial grounds because ADA Bucca delayed trial for 732 days. (Compl. ¶ 16). Thus, any claim for false arrest would likely be barred by the statute of limitations, although a claim for malicious prosecution could survive because plaintiff claims that the trial "began" before the Town of Athens Judge on April 19, 2012. Judge Koweek would have reversed the conviction after that date, and likely within the statute of limitations. Thus, the court will recommend dismissing any false arrest claims, but will recommend allowing the case to proceed as against defendant Rowell only for malicious prosecution.[20]

---

[20] Plaintiff does not actually raise malicious prosecution against defendant Rowell, but the Second Circuit has cautioned that the court must interpret pro se complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*,

24

To the extent that plaintiff attempts to name defendant Rowell as a defendant based on his allegedly false testimony at trial, any such claim would be barred by the witness immunity discussed above.

## VII. Section 1985 Conspiracy

### A. Legal Standards

To establish a claim under section 1985(3),[21] plaintiff must establish a racial or class-based conspiracy to deprive a person or class of persons of equal protection of the laws. 42 U.S.C. § 1985(3). Plaintiff must also establish an act done in furtherance of the conspiracy, and he must establish that he was injured in his person or property as a result. *Id.* In addition, conclusory, vague, or general allegations of conspiracy are insufficient to state a claim under section 1985. *White v. St. Joseph's Hospital*, No. 08-2876, 2010 U.S. App. LEXIS 5070, *4 (2d Cir. March 10, 2010) (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003)).

### B. Application

In this case, plaintiff alleges only the defendants "conspired" against him, and

---

14 F.3d 787, 790 (2d Cir. 1994)). This court makes no finding as to the ultimate merits of any such claim, only that at this early stage of the proceedings the claim may continue.

[21] Plaintiff has not specified upon which subsection of 1985 he relies in his complaint. There are three subsections. However, neither subsection (1), nor subsection (2) apply in plaintiff's case. Section (1) is entitled "Preventing officer from performing duties," and subsection (2) involves obstructing justice, and intimidating parties, witnesses, or jurors.

claims that certain facts "tie" defendants together. There is no class-based or racial conspiracy alleged. As stated above, any conspiracy claims are as conclusory as the rest of plaintiff's claims and may be dismissed.

## VIII. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court notes that this is not the first time that plaintiff has attempted to bring these facts to the court's attention. In *Myers v. Spitz*, No. 9:13-CV-539 (GTS/RFT), plaintiff attempted to bring a habeas corpus petition while he was still incarcerated in the Greene County Jail.[22] In his habeas petition, plaintiff also claimed that his action arose from the 9/11 terrorist attacks, and his incarceration was "the result of a vast conspiracy among officials in Greene County." (*Id.* at 3). Plaintiff raised many of the same facts that he raises in this civil rights complaint, but the petition was so

---

[22] Plaintiff is now incarcerated at Mid-State Correctional Facility.

"convoluted" that Judge Glenn Suddaby dismissed the petition with leave to amend. (Dkt. No. 3 in 13-CV-539).

Plaintiff attempted to amend his habeas petition. In the amended petition, in response to a question regarding the "conviction" he was challenging, he mentioned the "secret Grand Jury indictment," a "default probation violation," and "selective malicious prosecution" as the result of "nepotism and corruption in Greene County." (Dkt. No. 5 in 13-CV-539). In the section of the form-petition, which asked about his state court proceedings, plaintiff mentioned his matrimonial action, and Judge Kimba Wood's alleged conflict of interest. (*Id.* at CM/ECF p.2). His federal "habeas" claims included malicious and selective prosecution; equal protection violations from the original matrimonial proceeding; ADA Bucca's alleged conflict of interest in plaintiff's current prosecution (then-completed); and claims about the "secret" Grand Jury proceedings. (*Id.* at 4-5).

On July 24, 2013, Judge Suddaby dismissed plaintiff's amended habeas petition because he failed to "provide sufficient coherent information" by which the Court could determine the grounds for habeas relief. (Dkt. No. 7 in 13-CV-539). Judge Suddaby gave Mr. Myers thirty days to file a second amended petition. (*Id.*) Myers did not do so, and on September 25, 2013, Judge Suddaby dismissed the petition in accordance with his July 24, 2013 Order. (Dkt. No. 9 in 13-CV-539). On October 7, 2013, Mr. Myers filed two documents. (Dkt. Nos. 10, 11 in 13-CV-539). One document requested

the re-opening of his habeas petition (Dkt. No. 10), and the second document requested that the court "convert" the habeas petition into a civil rights complaint (Dkt. No. 11).

In his request to "convert" the petition to a complaint pursuant to 42 U.S.C. §§ 1983, 1985, plaintiff included more than one hundred pages of "Exhibits." (Dkt. No. 11-1 in 13-CV-539). The "exhibits" all related to the facts that he attempted to raise in his "habeas" petition and the facts that he is attempting to raise in this civil rights action. (*Id.*) These documents include letters to the defendants in this action and court papers from plaintiff's criminal cases as well as other civil cases he has brought in state court.[23] (*See e.g. id.* at CM/ECF pp. 9-11, 12-16, 58-63).

On October 22, 2013, Judge Suddaby denied plaintiff's request to reopen his habeas corpus action, finding that plaintiff had "again failed to set forth any coherent basis for habeas relief," and that "[h]e has . . . submitted papers that are, for the most part, indecipherable." (Dkt. No. 13 in 13-CV-539 at 3). Judge Suddaby also denied plaintiff's motion to convert the action to a civil rights case. (*Id.* at 4). Judge Suddaby stated that if Mr. Myers wished to commence an action alleging a violation of his civil rights, he could "file a separate civil rights action pursuant to 42 U.S.C. § 1983, which will be subject to review under the Prison Litigation Reform Act . . . ." (*Id.*) Plaintiff

---

[23] Among other things, plaintiff had an issue with the removal and loss of property from his home, for which he brought an action in Greene County Supreme Court. (Dkt. No. 11-1 in 13-CV-539 at 58-63). Although none of the defendants listed in the Greene County action are defendants in this case, the Verified Complaint mentions defendants Seeley, Spitz, and Haines as being involved in his property issues, and that defendants Seeley and Spitz are "considered accessories." (*Id.* at 59).

was also warned that if he filed a civil rights action, the complaint must comply with Fed. R. Civ. P. 8, 10, and 11, which require that the complaint be signed, contain one or more named defendants who were involved in the alleged constitutional violation, and must contain a short, plain statement of the claims that gives the defendant(s) "fair notice" of what the claims are and the grounds upon which they rest. (*Id.*) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 192 (2d Cir. 2008)).  Plaintiff appealed Judge Suddaby's order, but the Second Circuit dismissed his appeal on August 26, 2014. (Dkt. No. 29 in 13-CV-539).

Plaintiff has now filed this action, which in addition to naming individuals who are immune from suit, continues to be incomprehensible for the most part.[24]  The issue now is whether to recommend that the court allow plaintiff a chance to amend his complaint.

Because defendants Bucca, Wilhelm, Frisbee, and Baeckmann are absolutely immune from suit, any attempt to amend his complaint with respect to these defendants would be futile.  The court will therefore recommend that the complaint be dismissed with prejudice as against these defendants.

This court is recommending dismissal of defendants Spitz and Seeley for failure of the plaintiff to assert their personal involvement in any of the conclusory allegations

---

[24] This court has been able to clarify some of plaintiff's claims only by looking at the documents that he filed in his habeas corpus action.

he lists. Plaintiff has only alleged that defendant Haines kept track of plaintiff's actions, did not report the good things that plaintiff does and only reported things that could be "used" against him. Plaintiff's other vague statements about defendant Haines do not state any constitutional claims. He has only alleged that Haines's civil rights violations are "replete" in the record. (Compl. ¶ 32).

However, the court will recommend dismissal without prejudice to the extent that plaintiff can make some concrete and specific allegations against these three defendants. In any amended complaint, plaintiff cannot simply state that defendant Seeley is liable for "various conditions" at the jail, and then list several alleged problems that he had at the facility without stating what conduct occurred, how defendant Seeley was involved in this conduct, and how it damaged plaintiff. The same is true for defendants Spitz and Haines. Plaintiff must also keep in mind that any conduct occurring prior to April 22, 2012 is likely barred by the statute of limitations absent some equitable tolling.

Any amended complaint must be a complete pleading that supercedes the original. N.D.N.Y.L.R. 7.1(a)(4). Plaintiff may ***not*** incorporate facts or claims from the original complaint. In an effort to make it simpler for plaintiff to do so, I will order delaying any service on defendant Rowell until the District Court rules on this recommendation. If the court approves this recommendation, and plaintiff chooses to file an amended complaint, he should include all his claims in one document, even

those against defendant Rowell that survive initial review. If the court adopts this recommendation, I will also recommend that the case be sent back to me to set a deadline for submitting a proposed amended complaint, for review of any proposed amended complaint submitted by plaintiff, and ultimately to order any necessary service of process.

## VIII. <u>Appointment of Counsel</u>

### A. **Legal Standards**

Even if the plaintiff is found to be indigent, appointment of counsel is not automatic. There is no *right* to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Section 1915 specifically provides that a court **may** request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, the Second Circuit listed the factors that a court must consider in making the determination of whether to appoint counsel. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. *Terminate Control Corp.*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). If so, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id*. This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61). In a motion for appointment of counsel, a party must also demonstrate that he has been unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d at 173-74 (quoting *Hodge v. Police Officers*, 802 F.2d at 61).

### B.   Application

Plaintiff has only recently filed this action. It is still early, and absent additional information or discovery, this court is unable to assess the substance of plaintiff's case. Where the court does not possess evidence, as opposed to mere allegations, relating to plaintiff's claims, the threshold requirement in the analysis of cases seeking appointment of pro bono counsel is not met. *See Harmon v. Runyon*, No. 96-Civ.-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997). Plaintiff states that he has attempted to obtain counsel on his own, but has been unable to do so.

This court has recommended dismissing a large portion of plaintiff's complaint, and is only recommending that a small part continue. Any motion for appointment of counsel should await the District Court's action on my recommendation and service on the remaining defendant or defendants based on the District Court's decision. Because

the court cannot determine the substance of plaintiff's action, the court need not proceed to a more in depth analysis of the *Hodge* factors and will deny plaintiff's motion for appointment of counsel without prejudice.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**[25] for purposes of this Order and Report-Recommendation only, and it is

**ORDERED**, that plaintiff file the appropriate authorization form and certified account statement within fourteen (14) days of this Order and Report-Recommendation, or the District Court may order dismissal without prejudice on that basis alone, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE** as against **DEFENDANTS BUCCA, WILHELM, FRISBEE, and BAECKMANN**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i-iii), and it is

**RECOMMENDED**, that the complaint be dismissed **WITHOUT PREJUDICE** as against defendants **SEELEY and SPITZ, and HAINES** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**RECOMMENDED**, that any claims against defendant **ROWELL,** relating to his testimony at trial and for false arrest be dismissed **WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii-iii),[26] and it is

**RECOMMENDED**, if the District Court approves this Recommendation, that

---

[25] The court notes that even if plaintiff's application to proceed IFP is granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

[26] As discussed above, this court would allow plaintiff's claim of malicious prosecution against defendant Rowell to go forward. However, the court makes absolutely no finding regarding the ultimate viability or merit of such a claim.

the case be sent back to me to set a deadline for submitting a proposed amended complaint, for review of any proposed amended complaint submitted by plaintiff, and ultimately to order any necessary service of process, and it is

**ORDERED,** that any service on defendant **ROWELL** on the malicious prosecution claim is **STAYED** until plaintiff files the appropriate IFP documents and the District Court rules on this Recommendation, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 14, 2015

_____

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**